FILED
United States Court of Appeals
Tenth Circuit

**July 16, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CARL C. JACKSON,

      Plaintiff - Appellant,

v.

TERRY MARTIN, Warden,

      Respondent - Appellee.

No. 13-6240
(W.D. Oklahoma)
(D.C. No. 5:12-CV-00702-W)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Carl Jackson, an Oklahoma state prisoner, filed a pro se application for relief

under 28 U.S.C. § 2254 in the United States District Court for the Western District of

Oklahoma. The district court denied his application. Mr. Jackson now seeks a certificate

of appealability (COA) from this court to pursue an appeal. *See* 28 U.S.C.

§ 2253(c)(1)(A) (requiring a COA to appeal denial of § 2254 application). Liberally

construing his pleadings in this court, *see Brace v. United States,* 634 F.3d 1167, 1169

(10th Cir. 2011), we believe he is seeking relief on the following grounds: (1) that the

trial judge failed to give lesser-included-offense instructions, in violation of his due-

process rights; (2) that two searches, one of Mr. Jackson's person and one of his

temporary residence, were unlawful; and his trial counsel was ineffective in failing to

move to suppress evidence from the searches; (3) that trial counsel was ineffective in failing to impeach testimony with prior inconsistent statements; (4) that the trial judge was biased; (5) that the trial judge improperly excluded evidence of gang involvement; and (6) that accumulation of these errors denied Mr. Jackson a fair trial. We deny a COA and dismiss the appeal.

## I.    BACKGROUND

Donnie Jeffers was fatally shot in Oklahoma City on May 18, 2006. Mr. Jackson was arrested and admitted to shooting in the direction of the victim. In its opinion affirming Mr. Jackson's conviction and sentence, the Oklahoma Court of Criminal Appeals (OCCA) summarized one of his statements to the police as follows:

> [Mr. Jackson stated] to Detective Miller that "Rab" Thompson had threatened and insulted his family earlier that day and he was fearful that "Rab" and his cohorts were going to cause his family trouble; and that later that evening, when fired upon by a man or group of individuals whom he thought included "Rab", [Mr. Jackson] fired back leading to the death of the decedent, the unintended victim.
>
> ****
>
> [Mr. Jackson] said that as a result of "Rab's" threats, he wanted to be armed and ready in case "Rab" showed up later, so he bought 2 guns and ammunition from "someone off the street". Then, under the cover of darkness, he hid behind the Chrysler New Yorker waiting for "Rab". Claiming he heard a gunshot, the armed [Mr. Jackson] said he ambushed the unidentified men from the car and "surprised" them, screaming at them to drop their weapons. When the unidentified men started shooting in his direction, Appellant admitted he just started shooting. The decedent was struck in the right side and in the buttock.

2

R., Vol. I at 224–25. Mr. Jackson later claimed that his confession was false and attempted to suppress it, but it was admitted at trial. His theory of defense at trial was that "the evidence point[ed] to a gang-related fight involving drugs," and that he was not involved. Tr. of Jury Trial Proceedings, Vol. I at 3–4 (*State v. Jackson*, No. CF-06-3225 (D. Okla. Feb. 2, 2008). The jury convicted him on one count of first-degree murder and he was sentenced to life imprisonment.

Mr. Jackson appealed his conviction to the OCCA, which affirmed the jury verdict. He also filed an application for postconviction relief in state court, which was denied by both the trial court and the OCCA. He then filed his § 2254 application in federal district court. The district court denied relief, and Mr. Jackson seeks to appeal.

## II. DISCUSSION

### A. Standard of Review

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.*

3

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). Relief is provided under the "unreasonable application" clause "only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (brackets and internal quotation marks omitted). Thus, a federal court may not issue a habeas writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See id.* Rather, that application must have been unreasonable. Therefore, for those of Mr. Jackson's claims which the OCCA adjudicated on the merits, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). In

4

reviewing the state-court decision under § 2254(d)(1), we are "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

For the reasons that follow, we hold that no reasonable jurist could debate that the district court's resolution of Mr. Jackson's claim was correct.

## B. Lesser-included instructions

Mr. Jackson argues that he was "denied due process of law and a fair trial" because of the "failure to give lesser-included offense instructions to the jury." Aplt. Br. at 6. But due process requires a lesser-included-offense instruction only when the defendant has been sentenced to death. *See Johnson v. Keith*, 726 F.3d 1134, 1135 n.2 (10th Cir. 2013). And insofar as Mr. Jackson is arguing that his counsel was ineffective for not requesting a lesser-included instruction, we note that no prejudice resulted because the OCCA held that such an instruction would have been unsupported by the evidence.

## C. Legality of Searches

Mr. Jackson argues that two searches conducted the evening of the crime were unlawful: (1) a search of his person near the scene of the crime and (2) a search of a house shortly thereafter. He also argues that his counsel was ineffective in not moving to suppress evidence from the searches. To prevail on a claim of ineffective assistance of counsel, the "defendant must show [(1)] that counsel's representation fell below an objective standard of reasonableness" and (2) that he was prejudiced by the substandard

5

representation. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

On direct appeal, however, the OCCA upheld the lawfulness of both searches. Therefore, the failure of trial counsel to file a motion to suppress could not have prejudiced him. The motion would have been denied. To be sure, the OCCA's view of the legality of the searches might have been incorrect. But we cannot grant habeas relief on that ground when, as here, the state court "has provided an opportunity for full and fair litigation of a Fourth Amendment claim." *United States v. Lee Vang Lor*, 706 F.3d 1252, 1257 (10th Cir. 2013) (internal quotation marks omitted).

### D.      Impeachment of Witness

Mr. Jackson argues that counsel was ineffective in discrediting police testimony about whether there had been crime-scene tape around the home where he was arrested. He argues, "Trial counsel failed to confront Lt. Campbell as to why his testimony [that there was no tape] conflicted with what the police originally reported to the State[.]" Aplt. Br. at 4. But he points to no evidence (only the prosecutor's opening statement) of what the police had reported. And, more importantly, he does not explain how a focus on the discrepancy would have helped him at trial. His counsel may have thought that the absence of tape was favorable evidence, so there would be no reason to cast doubt on the

6

lieutenant's testimony in that regard.  Also, contrary to Mr. Jackson's assertion in his brief, the presence of crime-scene tape was irrelevant to the legality of the officers' search of his person and the home.  On this issue he has failed to overcome the *Strickland* presumption that counsel's representation was reasonable.  *See Strickland*, 466 U.S. at 689.

### E.    Judicial Bias

Mr. Jackson argues that the trial judge was biased against him.  To support his claim, however, he relies only on rulings by the judge.  Such evidence does not suffice. *See United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006) ("Unfavorable judicial rulings do not in themselves call into question the impartiality of a judge.").

### F.    Gang Evidence

Mr. Jackson contends that his trial was so unfair as to deny due process because the trial judge excluded evidence that the victim and his associates were involved with gangs.  The Supreme Court, however, has noted its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  That reluctance has been overcome only when the proffered evidence in itself, if believed, would establish the defendant's innocence or the evidence was not excluded on the ground of relevance, risk of undue confusion, or similar traditional grounds.  *See Dodd v. Trammell*, No. 11-6225, 2013 WL 7753714, at *10–*11 (10th Cir. Oct. 16, 2013).  Here, Mr. Jackson has not established a due-process violation.  He has failed to show what precise evidence was excluded, what purpose

7

would have been served by admitting it, or why that purpose could not have been served by other evidence at trial. In short, it is impossible to credit his claim on the record before the court.

### G. Accumulation of Error

Mr. Jackson's final claim is that an accumulation of errors "denied [him] a fair trial and the due process of law." Aplt. Br. at 6. "In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013) (internal quotation marks omitted), *cert. denied*, 134 S. Ct. 176 (2013). "As the term cumulative suggests, we undertake a cumulative-error analysis only if there are at least two errors." *Id.* (brackets, ellipses, and internal quotation marks omitted). Mr. Jackson has failed to show any constitutional error, so there can be no cumulative error.

## III. CONCLUSION

We DENY the application for a COA and DISMISS the appeal. We GRANT Mr. Jackson's motion to proceed *in forma pauperis* (IFP).

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

8